**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

DAVID CARMICHAEL, #3678995,

      Plaintiff,

      v.

GREGG L. HERSHBERGER, *individually and as Secretary of Public Safety & Correctional Services of Maryland*,
MICHAEL STOUFFER, *individually and as Warden of Roxbury Correctional Institution*,
BENJAMIN BUSS, *individually and as Correctional Officer, Maryland State Prison*,
and
PETER JUKNELIS, *individually and as Hearing Officer, Maryland State Prison*,

      Defendants.

Civil Action No. TDC-14-3037

**MEMORANDUM OPINION**

Plaintiff David Carmichael, an inmate at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, has filed suit under 42 U.S.C. § 1983, alleging that Defendants Gregg L. Hershberger, the Maryland Secretary of Public Safety and Correctional Services; Michael Stouffer, Warden of RCI; Benjamin Buss, a Correctional Officer at RCI; and Peter Juknelis, a Hearing Officer at RCI (collectively, "Defendants"), violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Presently pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

# BACKGROUND

The following facts are presented in the light most favorable to Carmichael, the nonmoving party:

## I.       July 8, 2014 Altercation

On the morning of July 8, 2014, RCI Correctional Officer Benjamin Buss ("Buss") escorted inmate David Carmichael ("Carmichael") and his cellmate Bruce Owens from the showers back to their cell in an administrative segregation housing unit. Once inside the cell, Carmichael, who was handcuffed, asked why Buss had not allowed Carmichael to have his one hour of out-of-cell recreation that day. Carmichael then put his hands through the food slot of the cell door so that Buss could remove his handcuffs. As Buss was removing the handcuffs, Carmichael asked to speak with Buss's supervisor to discuss the denial of recreation. Buss then yanked Carmichael's hands through the slot, violently pulling Carmichael into the inside of the cell door. The impact caused "enorm[]ous pain" in Carmichael's right shoulder. Compl. ¶ 9, ECF No. 1. Carmichael pulled back, in the process breaking the handcuff key and pinching Buss's finger against the cell door. Buss then asked Officer Fignar, who was nearby but did not witness the altercation, for assistance in removing the handcuffs, which was accomplished without further incident.

Carmichael claims that he was in severe pain for a week following the incident, and that he made multiple requests to Buss and other prison staff for medical attention. His requests were ignored until July 23, two weeks after the incident, when prison medical staff examined him. At that time, he had a "[l]imited range of motion" in his right shoulder—a shoulder he had injured three years previously—and a "weak" grip in both hands. Mot. Dismiss Ex. 14, Carmichael Medical Records at 1, ECF No. 9-17. No discoloration or swelling was observed. Carmichael

was instructed to avoid lifting heavy objects and to return in ten days if his condition had not improved.  Carmichael was examined by prison medical staff again on August 15, 2014 and December 29, 2014, but did not complain of shoulder or wrist pain on those occasions.  On January 15, 2015, Carmichael told an investigator from the Department of Public Safety and Correctional Services' Intelligence and Investigative Division[1] ("IID") that his shoulder still hurt from the altercation with Buss.

## II.     July 16, 2014 Disciplinary Hearing

Following the July 8 altercation, Buss filed a disciplinary ticket that accused Carmichael of assault or battery and of damaging prison property.  Buss's ticket triggered a July 16 disciplinary hearing before Hearing Officer Peter Juknelis ("Juknelis").  At the hearing, Carmichael described his version of events and questioned Officer Fignar, who had not witnessed the altercation.  Juknelis accepted Officer Buss's version of events and penalized Carmichael by imposing 365 days of segregation, revoking 365 good-conduct credits, charging $4.99 in restitution for the broken handcuff key, and suspending visitation privileges for six months.

Carmichael appealed Juknelis's decision to Warden Stouffer on several grounds.  He claimed that Buss had falsely accused him in retaliation for a complaint Carmichael filed about being denied recreation on July 8.  He also claimed that Juknelis prevented him from calling his cellmate as a witness, that Juknelis was biased by his personal relationship with Officer Buss, and that Juknelis failed to follow mandated hearing procedures.  According to a declaration from the Executive Director of the Inmate Grievance Office submitted by Defendants and not disputed

---

[1]  The IID was formerly known as the Internal Investigative Unit.

by Carmichael, Carmichael's appeal is still pending before that office because Carmichael has failed to submit all of the appropriate paperwork.

## III.    Carmichael's Administrative Complaints and the Related Investigation

Carmichael filed three grievances, or Administrative Remedy Procedure (ARP) forms, regarding the July 8, 2014 incident.  The first ARP, numbered RCI-ARP-0463-14 ("First ARP"), was submitted on July 8 and complains that Buss denied Carmichael his recreation that day "for no reason."  Mot. Dismiss Ex. 17, First ARP at 1, ECF No. 9-20.  It makes no mention of a physical altercation.  The second ARP, numbered RCI-ARP-0462-14 ("Second ARP"), was filed on July 10 and complains about Buss's use of force on July 8 by asserting that Buss became "physically aggressive by forcefully yanking [Carmichael's] arm through the door's open food slot" after Carmichael asked to speak to Buss's supervisor.  Mot. Dismiss Ex. 18, Second ARP at 4, ECF No. 9-21.  It also asserts that Buss filed a false disciplinary ticket against Carmichael as retaliation for Carmichael's submission of the First ARP.  The third ARP, numbered RCI-ARP-0477-14 ("Third ARP"), was submitted on July 18 and provides an account of the altercation similar to that in the Second ARP, but makes no mention of Buss's retaliatory ticket and states that "staff" denied Carmichael medical care despite "constant pain" in his "right arm and shoulder" following the incident.[2]  Mot. Dismiss Ex. 19, Third ARP at 1-2, ECF No. 9-22.

Prison officials dismissed the First ARP on July 16 as repetitive of the Second ARP.  Carmichael withdrew the Second ARP on July 22, signing a form that stated, "I also understand that failure to exhaust the administrative remedy procedure by withdrawing my request may result in dismissal of my complaint at a higher level."  Second ARP at 1.  Prison officials also

---

[2]  The record contains copies of two other ARPs filed by Carmichael.  One of the ARPs, dated May 16, 2014, asks prison officials to explain to him why he was moved to administrative segregation.  The other, dated July 7, 2014, complains of unsanitary conditions in the prison's showers.  Neither ARP is pertinent to the claims in Carmichael's Complaint.

dismissed the Third ARP because the complaint had been forwarded to the IID.  Carmichael did not appeal the dismissal of the First or Third ARPs and has not disputed the withdrawal of the Second ARP.

The IID investigation, which included an interview of Carmichael and a review of relevant prison records, was completed on January 16, 2015.  The report summarizing the investigation did not draw any conclusions about the July 8 altercation and made no recommendations for further action aside from forwarding a copy to the Washington County State's Attorney's Office for review.

## IV.    Procedural History

On September 24, 2014, Carmichael filed the verified Complaint in this case, attaching signed declarations from himself and Owens, as well as a copy of the Third ARP.   The Complaint, brought under 42 U.S.C. § 1983, asserts the following violations of the Eighth and Fourteenth Amendments:   (1) Buss used excessive force when he pulled Carmichael's handcuffed arms through the cell door slot; (2) Buss and Warden Stouffer were deliberately indifferent to Carmichael's medical needs; (3) Buss retaliated against Carmichael in the wake of their altercation by denying him recreation and telephone privileges, and by filing a false disciplinary ticket against him; (4) Juknelis failed to give Carmichael a fair hearing on the disciplinary ticket filed by Buss; (5) Warden Stouffer has denied Carmichael the one hour of daily recreation to which he is entitled; and (6) Secretary Hershberger failed properly to supervise Stouffer, resulting in "an environment of unsafe conditions, in which physical abuse could become part of normal operations," Compl. ¶ 25.  Carmichael has sued all Defendants in their individual and official capacities.  He seeks a declaratory judgment stating that Defendants violated his constitutional rights, compensatory and punitive damages, and an injunction

ordering Hershberger to provide him with one hour of recreation every day.  On February 19, 2015, Defendants filed the present Motion, attaching witness declarations and prison records. Carmichael filed a Response to the Motion on May 4, 2015.

## DISCUSSION

In their Motion, Defendants seek dismissal or summary judgment on a variety of grounds, including that:  (1) the Eleventh Amendment bars claims against Defendants in their official capacities; (2) Carmichael has failed to state a claim against Hershberger and Stouffer because they did not personally participate in the alleged wrongdoing;  (3) Carmichael failed to exhaust administrative remedies; (4) Defendants did not engage in excessive force; (5) Defendants were not deliberately indifferent to a serious medical need; and (6) Defendants are entitled to qualified immunity because they did not violate a clearly established federal right.

## I.      Legal Standard

### A.      Motion to Dismiss

The Eleventh Amendment claim and the claims against Hershberger and Stouffer are properly considered as the subject of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the

6

complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B.    Motion for Summary Judgment

Because both parties have submitted evidence for the Court's review, the Motion will be construed, with respect to the remaining claims, as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).  Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  The nonmoving party has the burden to show a genuine dispute on a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.* at 248-49.

## II.    Eleventh Amendment Immunity

Defendants assert Eleventh Amendment immunity from suits against them in their official capacities.  Absent waiver by the state, the Eleventh Amendment bars suits in federal court against states, and state officials in their official capacities, except suits seeking prospective

injunctive relief from ongoing violations of federal law.  *Will v. Mich. Dep't of State Police*, 491

U.S. 58, 66, 70-71 & n.10 (1989); *Bland v. Roberts*, 730 F.3d 368, 389-91 (4th Cir. 2013).  The

Defendants' employer, the Maryland Department of Public Safety and Correctional Services, is

part of a state agency, and the State of Maryland has not waived its immunity from suits in

federal court against state prison officials, including those working at RCI.  *Clark v. Md. Dept. of*

*Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 775-76 (D. Md. 2003).  Therefore, all claims

against Defendants in their official capacities are dismissed, with the exception of Carmichael's

request for an injunction relating to recreation.

## III.    Supervisory Liability

Defendants seek dismissal under Rule 12(b)(6) of the claims against Hershberger and

Stouffer in their individual capacities because those officials had no personal role in the activities

underlying Carmichael's claims.  In § 1983 cases, there is no vicarious liability (*respondeat*

*superior*) against government officials for the acts of their subordinates.  *Wright v. Collins*, 766

F.2d 841, 850 (4th Cir. 1985).  Because the pleadings of self-represented litigants should be

construed liberally, *Erickson*, 551 U.S. at 94, the Court will treat the Complaint as alleging that

both Hershberger and Stouffer have supervisory liability for any unconstitutional actions by Buss

and Juknelis.  Under such a theory, a plaintiff must prove:

> (1)  that the supervisor had actual or constructive knowledge that his subordinate was
>      engaged in conduct that posed a pervasive and unreasonable risk of constitutional
>      injury to citizens like the plaintiff;
>
> (2)  that the supervisor's response to that knowledge was so inadequate as to show
>      deliberate indifference to or tacit authorization of the alleged offensive practices[];
>      and
>
> (3)  that there was an affirmative causal link between the supervisor's inaction and the
>      particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994) (internal quotation marks omitted). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* at 799 (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Carmichael's claims against Stouffer are that as Warden of RCI, (1) he was deliberately indifferent to Carmichael's medical needs following the altercation with Buss; and (2) he failed to provide the one hour of recreation per day contemplated by RCI's policy.  He also asserts in the fact section of the Complaint that Stouffer allowed Buss to deny showers, phone calls, and recreation, and he allowed Buss and Juknelis to retaliate against inmates in solitary confinement. As for Hershberger, the Maryland Secretary of Public Safety and Correctional Services, Carmichael alleges that he failed properly to supervise Stouffer and thus allowed RCI to develop an environment with unsafe conditions and physical abuse.

Carmichael does not allege that either Stouffer or Hershberger had any direct involvement in the July 8 altercation, the decisions regarding Carmichael's subsequent medical care, or the decisions relating to his recreation time, showers, phone calls, or other living conditions.  To state a claim against Stouffer, Carmichael would have to allege facts to show that he had "actual or constructive knowledge" that Buss was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury.  A claim against Hershberger would have to show knowledge of such misconduct by Stouffer.  Carmichael has alleged no such facts in the Complaint.  Thus, the claims against Stouffer and Carmichael should be dismissed under Rule 12(b)(6).

In his Response, Carmichael claims that Buss's personnel record was available to Stouffer and Hershberger and shows that Buss had a history of "assaults and other serious complaints," Pl.'s Resp. at 3, ECF No. 13, that would have provided Stouffer and Hershberger with knowledge of his unconstitutional conduct.   Even if the Court were to consider such information, which would transform the motion into one for summary judgment, Fed. R. Civ. P. 12(d), Buss's record includes only one allegation of "Excessive Use of Force" dated August 12, 2008 and one undated allegation of "Assault."  Mot. Dismiss Ex. 10, IID Report at 4, ECF No. 9-13.   The disposition of the former is described as "CLOSED NONSUSTAINED;" the latter is characterized as "CLOSED/OTHER."   *Id.*   Two allegations of past misconduct, at least one of which appears to have been found lacking in merit, are not sufficient to put Stouffer on notice that Buss was engaging in conduct that posed an unreasonable risk of inflicting constitutional injuries to inmates such as Carmichael.  Even if these incidents were pertinent, Carmichael does not offer any facts to show that Stouffer tacitly authorized Buss's conduct, or that a failure by Stouffer to address such conduct specifically caused Buss's actions toward Carmichael.  As for Hershberger, Carmichael has offered no evidence of misconduct by Stouffer, Hershberger's subordinate, of which Hershberger was supposedly aware.   Thus, Carmichael's claims against Hershberger and Stouffer fail under either a Rule 12(b)(6) or Rule 56 standard.   They are therefore dismissed for failure to state a supervisory liability claim.

## IV.    Exhaustion of Administrative Remedies

Defendants also assert that Carmichael's claims should be dismissed because he failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a).   Exhaustion of

administrative remedies is an affirmative defense most properly considered on a motion for summary judgment. *See Jones v. Bock*, 549 U.S. 199, 211-12 (2007).

### A.    Legal Framework

The PLRA provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Jones*, 549 U.S. at 219.  Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate need only exhaust "available" remedies, and "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."   *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).   But the exhaustion requirement demands that an inmate follow the prison's "applicable procedural rules" so that the prison has an opportunity to address the claim administratively.   *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit under § 1983.  *Booth v. Churner*, 532 U.S. 731, 734-35, 740-41 (2001); *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

One way for inmates in Maryland state prisons to present their complaints to prison officials is the Administrative Remedy Procedure (ARP).  The ARP has three steps:  an initial request for relief from the warden, an appeal of the warden's denial to the Commissioner of Corrections, and an appeal of the Commissioner's denial to the Inmate Grievance Office.  Md. Code Regs. 12.07.01.05(B); *Blake v. Ross*, 787 F.3d 693, 697 (4th Cir. 2015).  Inmates may seek judicial review of the Inmate Grievance Office's final determinations in a Maryland Circuit Court.  Md. Code Corr. Servs., § 10-210.

Another administrative route available to inmates, particularly to address allegations of excessive force by correctional officers, is an investigation by the IID.  *See* Md. Code Regs. 12.11.01.05(A)(3).  When the IID begins an investigation into an incident that an inmate has already reported through an ARP, the ARP may be dismissed without a decision on its merits. *Blake*, 787 F.3d at 699-700.

### B.       Exhaustion of Carmichael's Claims

Defendants assert that all of Carmichael's claims should be dismissed for failure to exhaust administrative remedies because they were never brought through the ARP process, or were the subject of ARPs that were withdrawn or not pursued through all three levels of the administrative process.  Defendants bear the burden of proving the affirmative defense of exhaustion.  *Jones*, 549 U.S. at 216.

Carmichael has exhausted administrative remedies for his excessive force and denial of medical care claims.  Carmichael raised complaints about Buss's alleged excessive force and the alleged denial of medical care in his Third ARP.  This ARP was procedurally dismissed because an IID investigation had been initiated.  Although Carmichael did not appeal this dismissal, he was not required to do so.  In *Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015), an inmate reported an

incident of alleged excessive force to prison authorities, which led to an IID investigation that resulted in a formal report.  *Id.* at 695-96.  The United States Court of Appeals for the Fourth Circuit held that even though the inmate had not filed an ARP, the initiation and completion of an IID investigation satisfied the requirement to exhaust administrative remedies, because the substance of his claim was fully investigated, such that prison officials had an opportunity to develop a record and address the matter internally.  *Id.* at 698-701.  Here, when Carmichael reported his excessive force and denial of medical care claims by filing his Third ARP, the prison chose to dismiss that ARP in favor of initiating an IID investigation of these claims, which was pursued to completion.  Under *Blake*, the completion of the IID investigation satisfied the exhaustion requirement on these claims.  *See id.*

By contrast, Carmichael has failed to exhaust his administrative remedies on his remaining claims.  Although Carmichael raised a complaint about his recreation time in the First ARP, that ARP was dismissed, and Carmichael did not pursue the appeal process on that claim. To the extent that Carmichael is asserting a claim against Officer Buss for retaliating against him by filing a false disciplinary ticket, that claim was only raised in the Second ARP, which Carmichael voluntarily withdrew.  None of Carmichael's other allegations relating to retaliation, such as his claims that he was denied recreation and telephone privileges following the July 8 altercation, were asserted in any of the ARPs or were covered by the IID investigation.

As for his claim that Juknelis violated his due process rights by failing to provide a fair hearing on Buss's disciplinary ticket against him, Carmichael has not raised those claims in an ARP.  He did raise those concerns in his appeal of Juknelis's disciplinary hearing decision, but his appeal of that decision remained pending at the time this case was filed**.**

Thus, Carmichael has exhausted administrative remedies for his claims of excessive force and denial of medical care against Buss.  He has not exhausted administrative remedies for his remaining claims.  The Court therefore grants summary judgment in favor of Defendants on the claims against Buss for denial of recreation and retaliation, and against Juknelis for denial of due process.

## V.   Qualified Immunity

Defendants seek summary judgment on the remaining claims on the basis that they are entitled to qualified immunity from suit in their individual capacities.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Summary judgment should be denied on a qualified immunity claim if (1) there is sufficient evidence to establish a genuine issue of material fact on whether the government official violated one of the plaintiff's federally protected rights; and (2) the right at issue was "clearly established" at the time of the events in question.  *See id.* at 232.  Defendants primarily argue that the evidence is not sufficient to establish that Buss violated Carmichael's constitutional rights either by (1) using excessive force against Carmichael; or (2) denying him medical care.

### A.   Excessive Force

#### 1.  Violation of a Federal Right

Defendants argue that they are entitled to summary judgment on Carmichael's excessive force claim against Buss.  Claims of excessive force by a correctional officer against an inmate are analyzed as possible violations of the Eighth Amendment prohibition on cruel and unusual

punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Hudson v. McMillian*, 503 U. S. 1, 5-7 (1992). The "unnecessary and wanton infliction of pain" by a correctional officer violates the Eighth Amendment. *Hudson*, 503 U.S. at 5. The "core judicial inquiry" on such an Eighth Amendment claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6-7. To answer this question, courts look to "the extent of injury suffered by an inmate," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321).

In addition to showing that the officer acted maliciously, a party asserting an Eighth Amendment excessive force claim must also demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of at least *de minimis* force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Here, there is a genuine issue of material fact whether Buss acted "maliciously or sadistically to cause harm" when he was removing Carmichael's handcuffs. Carmichael states that, when he asked to speak to Buss's supervisor about recreation, Buss pulled Carmichael's hands violently through the food slot, slamming Carmichael against the cell door. The force was unnecessary because Carmichael was complying with Buss's efforts to remove his handcuffs. That Buss applied the force in response to Carmichael's request to speak to Buss's supervisor is

further evidence that his purpose was to cause harm.  Carmichael's account is generally corroborated by Owens, Carmichael's cellmate and the only other known eyewitness, who stated that after "David Carmichael asked Officer B. Buss why is he being denied his 1-hour of recreation[,] . . . Buss forcefully snatched David Carmichael['s] right, handcuff[ed] wrist towards him, therefore causing David Carmichael's right shoulder to slam into the steel metal door." Compl. Ex. B, Owens Decl. at 2, ECF No. 1-5.

Buss exerted more than a *de minimis* amount of force.  He pulled hard enough to re-injure Carmichael's right shoulder and to injure his hands—injuries which Carmichael states caused him considerable pain over the next week.  According to Owens, Carmichael complained about pain during that time period and asked for medical attention.  The level of force was therefore consistent with the force used in other cases deemed to be nontrivial and not *de minimis*.  In a substantially similar case, the Fourth Circuit reversed a grant of summary judgment where a correctional officer responded to an inmate who asked to speak to a supervisor by pulling the inmate's handcuffed arms through the tray slot, causing abrasions, lacerations, and an injury to the inmate's pinky finger that proved to be "mild tissue swelling." *See Bacon v. Wood*, -- F. App'x --, No. 15-6073, 2015 WL 3973946, at *2 (4th Cir. July 1, 2015); *Bacon v. Wood*, No. 7:13CV00565, 2014 WL 7369356, at *1 (W.D. Va. Dec. 29, 2014) (describing the facts of the incident).  The Fourth Circuit concluded that the evidence was sufficient to support a finding both that the officer had acted with malicious intent and that the amount of force was sufficient to establish an Eighth Amendment violation because there was "no threat to discipline, no need to apply any force," and the amount of force was "disproportionate to the need to use force." *Bacon*, 2015 WL 3973946, at *2; *see also Hendrickson v. Cooper*, 589 F.3d 887, 889-92 (7th Cir. 2009) (holding that a correctional officer used more than *de minimis* force when he

16

responded to an inmate's insult by throwing the inmate against the wall, slamming him onto the ground, and putting a knee on his back, thus aggravating the inmate's preexisting back and neck problems).

Officer Buss tells a different story in which Carmichael, without provocation, pulled his handcuffs away from the cell door, causing Officer Buss's finger to be injured by the cell door food slot.  Carmichael admits to pulling his hands away from Buss, but he claims he did so only in response to Buss's initial aggression.  At the summary judgment stage, however, the Court must view the evidence in the light most favorable to Carmichael, so for purposes of this Motion the Court must credit Carmichael's account.

Defendants also assert that Carmichael's "medical records prove conclusively that any physical contact used by the correctional officer was minimal and applied in a good faith effort to maintain order and discipline."  Mot. Dismiss at 16, ECF No. 9-2.  Although the record of Carmichael's examination on July 23 indicates that there was no visible swelling or discoloration, that examination took place over two weeks after the incident, after multiple requests by Carmichael to see a doctor, so the lack of documentation of visible evidence of the injuries does not undermine Carmichael's account.  As discussed above, a significant injury resulting from an alleged excessive force incident is not an element of an Eighth Amendment claim.  *Wilkins*, 559 U.S. at 38.  Moreover, the medical report documents a limited range of motion in Carmichael's right shoulder and weakness in his grip with both hands—conditions that are arguably consistent with his version of events.  Although noting that Carmichael had a preexisting shoulder injury, the report reaches no conclusions about the extent to which either the limited range of motion in Carmichael's right shoulder or his weak grip predated the July 8 altercation.  The medical records thus prove neither the amount of force Buss employed against

Carmichael nor why he used the force he did.   Particularly where Defendants do not deny Carmichael's assertions that he suffered severe pain following the incident or Owen's statements that Carmichael was in pain and asked for medical attention during the period after the incident, the evidence is sufficient to support an excessive force claim.

### 2.   Clearly Established Right

Having found that there is a genuine issue of material fact on Carmichael's excessive force claim against Buss, the Court considers whether the right allegedly violated was "clearly established" at the time of the incident on July 8, 2014.  *Pearson*, 555 U.S. at 232.  "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, both the Supreme Court and the Fourth Circuit held, prior to July 2014, that inmates have an Eighth Amendment right to be free from excessive force by correctional officers, and that force that is more than *de minimis* can support such a claim even without serious injury.  *Hudson*, 503 U.S. at 4; *Wilkins*, 559 U.S. at 37-39; *Hill v. Crum*, 727 F.3d 312, 320-21 (4th Cir. 2013).  Thus, Buss is not entitled to qualified immunity on the excessive force claim.

### B.      Denial and Delay of Medical Care

Defendants also argue that they are entitled to summary judgment on Carmichael's claim that Buss denied him medical care in violation of the Eighth Amendment.  A prison official violates the Eighth Amendment when the official shows "deliberate indifference to [the] serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  To be "serious," the condition must be "one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).  This requirement differs from the excessive force context in which no injury, let alone a significant injury, is needed.  *Danser v. Stansberry*, 772 F.3d 340, 350 n.8 (4th Cir. 2014).

A prison official is not deliberately indifferent to an inmate's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Jackson*, 775 F.3d at 178.  Deliberate indifference is an "exacting standard" that requires more than a showing of "mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178.  "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

Non-medical prison staff, such as correctional officers, can violate the Eighth Amendment if they intentionally delay an inmate's access to available treatment for a serious condition. *Estelle*, 429 U.S. at 104-05; *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995).

Carmichael alleges that he "was not provided with constitutionally adequate medical care." Pl.'s Resp. at 14.  But he admits that he was examined by prison medical staff, and he offers no facts to explain why his treatment was inadequate.  Carmichael's prison medical records, which Carmichael does not dispute, indicate that medical staff instructed Carmichael to return for additional care if his shoulder and hands did not improve within ten days of his July 23

visit.  Carmichael did not see a nurse again until August 15, for another purpose, and did not then raise any concerns about his shoulder or hands.  Carmichael thus has not identified a genuine issue of material fact on the constitutional adequacy of his treatment.

Carmichael's allegations relating to the delay in his treatment are more specific but not more successful.  Carmichael asserts that Buss's assault left him in severe pain, and that he made numerous requests to Buss and other prison staff for medical attention, but that Buss denied him access to a doctor.  Carmichael's Third ARP, filed ten days after the incident, alleged that he was being denied medical treatment.  There is no dispute that two weeks passed before Carmichael received any medical attention.

But even if a reasonable factfinder could conclude that Buss was deliberately indifferent to Carmichael's medical needs, an issue the Court does not decide here, it could not find that Carmichael's medical needs were serious.  Claims against correctional officers for deliberate indifference in denial or delay of medical care can only succeed if there is, under an objective standard, "a 'sufficiently serious' medical need to require medical treatment."  *Brice*, 58 F.3d at 104 (quoting *Farmer*, 511 U.S. at 834).  Constitutional violations resulting from delays in treatment have involved injuries much more severe than those Carmichael alleges.  *See, e.g., Brice*, 58 F.3d at 104 (broken jaw); *Cooper v. Dyke*, 814 F.2d 941, 943-45 (4th Cir. 1987) (gunshot wound); *Sosebee v. Murphy*, 797 F.2d 179, 181-82 (4th Cir. 1986) (fever, severe chest pain, and inability to swallow, followed by death); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (broken arm).  Moreover, all of these cases involved inmates whose conditions eventually required specific treatment.  Carmichael received no treatment other than an instruction to avoid heavy lifting.  He does not assert that more was required, or even that earlier treatment would have reduced his discomfort.  Carmichael's injuries may have been painful, but

they were not sufficiently serious to cross the threshold to establish an Eighth Amendment claim for deliberate indifference to a serious medical need.  Because the evidence does not support a claim that Buss violated a federally protected right arising from the alleged denial or delay in medical care, Buss is entitled to qualified immunity on that claim.  The Court therefore grants summary judgment to Defendants on Carmichael's Eighth Amendment claim for denial or delay of medical care.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to all claims against Hershberger, Stouffer, and Juknelis.  The Motion is GRANTED with respect to all claims against Buss with the exception of Carmichael's Eighth Amendment claim against Buss in his individual capacity for excessive force.  The Motion is DENIED as to the Eighth Amendment excessive force claim against Buss in his individual capacity.  A separate Order follows.


Date: September 30, 2015                    _____/s/_____
                                           THEODORE D. CHUANG
                                           United States District Judge