UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DAVID CARMICHAEL,

    Plaintiff,

v.

BENJAMIN BUSS,

    Defendant.

Civil Action No. TDC-14-3037

## MEMORANDUM OPINION

David Carmichael, currently confined at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, filed this action alleging that Benjamin Buss, a Correctional Officer at RCI, used excessive force against him in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[1] Pending before the Court is Buss's Motion to Dismiss or, in the Alternative, for Summary Judgment. For the reasons set forth below, the Motion is denied.

## BACKGROUND

The following facts are presented in the light most favorable to Carmichael, the nonmoving party.

---

[1] Carmichael had also named as defendants Gregg L. Hershberger, the Maryland Secretary of Public Safety and Correctional Services; Michael Stouffer, Warden of RCI; and Peter Juknelis, a Hearing Officer at RCI. In its September 30, 2015 Memorandum Opinion and Order, the Court dismissed Carmichael's claims against Hershberger, Stouffer, and Buss in his official capacity, granted summary judgment in favor of Juknelis, and granted summary judgment in favor of Buss on certain other claims presented by Carmichael. *Carmichael v. Hershberger*, No. TDC-14-3037, 2015 WL 5832401, at *10 (D. Md. Sept. 30, 2015).

## I. July 8, 2014 Incident

On the morning of July 8, 2014, Buss was conducting a routine count of the inmates, during which he typically noted any inmate requests for showers, recreation, and phone calls. Both Carmichael and his cellmate, Bruce Owens, requested a shower, recreation time, and a phone call, which Buss noted on a piece of paper. Approximately 15 minutes later, Buss returned to their cell to escort them to the shower stalls. After the showers, Buss walked Carmichael and Owens back to their cell rather than providing them with recreation and a phone call. When Carmichael asked him why he had denied their requests for recreation and phone calls, Buss became agitated. Carmichael then asked to speak with a supervisor. Buss responded that he would "send a supervisor to the cell," but Carmichael nevertheless asked again for a supervisor. Carmichael Dep. 88:21, 89:1-11, Pl.'s Opp'n Ex. A, ECF No. 51-1. Buss instructed Carmichael and Owens, in an angry, forceful tone, to step into the cell and closed the door behind them. Carmichael, who was handcuffed with his hands behind his back, put his hands through the food slot of the cell door so that Buss could remove his handcuffs. Buss uncuffed his left wrist and, as Carmichael extended his right arm through the food slot, Carmichael asked again for a supervisor. According to Carmichael, an agitated Buss then forcefully yanked Carmichael's right arm, still handcuffed, causing the right side of Carmichael's body, including his shoulder, to slam into the inside of the cell door. Carmichael pulled back, in the process breaking the handcuff key and pinching Buss's hand between the food slot and cell door. According to Owens, Buss "pulled" and "yanked" again once more. Owens Dep. 32:17-21, Pl.'s Opp'n Ex. C, ECF No. 51-3. For his part, Buss denies pulling Carmichael against the door and asserts that it was Carmichael, upset about not getting recreation time, who pulled away, causing Buss's hand to get caught in the food slot and the handcuff key to break.

2

As a result of the July 8 incident, Carmichael felt pain in his right shoulder, which he described as an eight on a scale from one to ten, and a numbing sensation in his right hand from where the handcuff tightened around his right wrist. Carmichael asked for medical care on several occasions and continued to complain of pain for approximately one week or more.

## II. Internal Grievances

Carmichael filed three Administrative Remedy Procedure forms ("ARPs") regarding the July 8, 2014 incident. According to the RCI inmate handbook, an ARP is "a formal complaint allowing formal appeal of the Warden's response to the Deputy Secretary for resolution of the complaint at Division Headquarters." Mot. Summ. J. Ex. 2, at 4. The first ARP, numbered RCI-0463-14 ("First ARP"), was submitted on July 8 and complains that Buss denied Carmichael his recreation that day "for no apparent reason." First ARP 1, Carmichael Dep. Ex. 6, Pl.'s Opp'n Ex. A. The second ARP, numbered RCI-0462-14 ("Second ARP"), was filed on July 10 and complains, as relevant here, about Buss's use of force on July 8, stating that Buss became "physically aggressive by forcefully yanking my arm through the door's open food slot" after Carmichael asked to speak to Buss's supervisor. Second ARP 1, Carmichael Dep. Ex. 7, Pl.'s Opp'n Ex. A. The third ARP, numbered RCI-0477-14 ("Third ARP") and submitted on July 18, also alleges that Buss "physically assaulted" Carmichael after he had asked for a supervisor. Third ARP 1, Carmichael Dep. Ex. 8, Pl.'s Opp'n Ex. A.

On July 16, 2014, prison officials dismissed the First ARP as repetitive of the Second ARP. Sometime after the Second ARP was filed, Sergeant Harsh, the RCI ARP coordinator, asked Carmichael to "sign off" on it because the incident involving Buss was "already being investigated" by the Internal Investigative Unit ("IIU") and was therefore "moot." Carmichael Dep. 156-57, Pl.'s Opp'n Ex. A; Carmichael Dep. 181-82, Mot. Summ. J. Ex. 1. On July 22,

2014, Carmichael withdrew the Second ARP, signing a form that stated, "I acknowledge that my complaint can not be further addressed through the administrative remedy procedure. I also understand that failure to exhaust the administrative remedy procedure by withdrawing my request may result in dismissal of my complaint at a higher level." Second ARP 1. Also on July 22, 2014, prison officials dismissed the Third ARP because the complaint had been forwarded to the IIU.

Carmichael did not dispute the withdrawal of the Second ARP or appeal the dismissal of the First or Third ARPs. Carmichael did not take further action on the ARPs because of Sergeant Harsh's statements. According to Carmichael, "I took him for his word," and "I had no reason to doubt what he was saying" because Carmichael received the IIU case number for the investigation of the July 8 incident. Carmichael Dep. 156-57, Pl.'s Opp'n Ex. A.

According to the inmate handbook, an appeal of an ARP must be filed with the Inmate Grievance Office ("IGO") within 30 days of the final ARP decision. When Carmichael first arrived at RCI, he received a copy of the inmate handbook at an orientation session that included information on how to file ARPs. Carmichael acknowledged reading the handbook. In September 2014, Carmichael received a letter from Prisoner Rights Information System of Maryland, Inc. ("PRISM"), in response to a request for guidance on whether he could file a lawsuit or criminal charges against Buss. The letter, in relevant part, summarized the exhaustion requirement and appeals process, tracking the information set forth in the Inmate Handbook and DCD.

### III. Disciplinary Proceeding

On July 8, 2014, after Carmichael had filed his first ARP relating to the July 8 incident, Buss filed a disciplinary ticket against Carmichael accusing him of assault or battery and damaging prison property based on the pinching of his hand and the breaking of the handcuff key. During a disciplinary hearing on July 16, 2014, Carmichael maintained that Buss had yanked him into the cell door by his cuffed right hand when he asked for a supervisor, and that "as a normal reaction," he yanked it back. Mot. Summ. J. Ex 5, ECF No. 48-8. At the hearing, Carmichael stated in his defense that "I did not intentionally assault Officer Buss or cause any problem for him to issue me a ticket," that Buss had filed the disciplinary ticket in retaliation for his filing of an ARP, and "whatever happened between Officer Buss and I—we both probably had a misunderstanding somewhere—and whatever happened, it never was not intentional. And I do apologize for that." *Id.* Hearing Office Peter Juknelis accepted Buss's version of events and penalized Carmichael by imposing 365 days of segregation, revoking 365 good-conduct credits, charging $4.99 in restitution for the broken handcuff key, and suspending visitation privileges for six months.

### DISCUSSION

In his Motion, Buss seeks summary judgment in his favor on the grounds that: (1) Carmichael failed to exhaust his administrative remedies; (2) Buss did not engage in excessive force against Carmichael; and (3) Buss is entitled to qualified immunity because he did not violate a clearly established federal right. For the reasons set forth below, the Motion is denied.

### I. Legal Standard

Because both parties have submitted evidence for the Court's review with respect to all arguments, the Motion will be construed as a motion for summary judgment. Under Federal

Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Exhaustion of Administrative Remedies

Buss first contends that Carmichael's claim should be dismissed because he failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)). Exhaustion of administrative remedies is an affirmative defense most properly considered on a motion for summary judgment. *See Jones v. Bock*, 549 U.S. 199, 211-12 (2007). The defendant bears the burden of proving the affirmative defense. *Id.* at 216.

### A. Legal Framework

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The exhaustion requirement demands that an inmate follow the prison's "applicable procedural rules" so that the prison has an opportunity to address the claim administratively. *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit under § 1983. *Booth v. Churner*, 532 U.S. 731, 734-35, 740-41 (2001); *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004). In Maryland, the ARP process is the primary way for inmates in state prisons to present their complaints—including complaints of excessive force—to prison officials. *See* Division of Correction Directive ("DCD") 185-002.VI.A, Mot. Summ. J. Ex. 3, ECF No. 48-6. The ARP process has three steps: an initial request for relief through an ARP submitted to the warden, an appeal of the warden's denial to the Commissioner of Corrections, and an appeal of the Commissioner's denial to the IGO. *See* Md. Code Regs. 12.07.01.04, 12.07.01.05(B) (2017); DCD 185-002.V.B-C, 185-002.VI.N. Inmates may seek judicial review of the IGO's final determinations in a Maryland circuit court. Md. Code Ann., Corr. Servs. § 10-210 (2002); DCD 185-002.VI.O. For complaints subject to the ARP

process, inmates may not file a request for relief directly with the IGO. *See* Md. Code Regs. 12.07.01.2D.

An inmate may also present a complaint alleging the use of excessive force to the IIU. *See* Md. Code Regs. 12.11.01.09(E). Notably, prison officials "shall issue a final dismissal of [the ARP] for procedural reasons when it has been determined that the basis of the complaint is the same basis of an investigation under the authority of the [IIU]." DCD 185-003.VI.N.4. Such a dismissal shall include a response to the inmate stating that "Since this case shall be investigated by IIU, no further action shall be taken within the ARP process." *Id.* An inmate may appeal the rationale for the procedural dismissal of an ARP. DCD 185-003.VI.N.7.

### B. Exhaustion of Carmichael's Claim

Buss argues that Carmichael did not properly exhaust administrative remedies on his excessive force claim because he did not complete all three steps of the ARP process. Carmichael raised a complaint about Buss's alleged excessive force in his Second and Third ARPs, but he withdrew the Second ARP, and the Third ARP was procedurally dismissed on the express grounds that an IIU investigation had been initiated. Buss claims that Carmichael's failure to appeal the dismissal to the IGO constituted a failure to exhaust.

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), decided after this Court issued its Memorandum Opinion on the first Motion to Dismiss in this case, the United States Supreme Court considered the specific administrative remedy scheme in Maryland prisons and, in particular, whether the existence of an IIU investigation would excuse an inmate from pursuing a related ARP through the full appeal process. *Id.* at 1855. The Court rejected the ruling of the United States Court of Appeals for the Fourth Circuit that the PLRA exhaustion requirement is not absolute, such that there is an unwritten "special circumstances" exception to the PLRA that excuses a failure to

8

exhaust if based on reasonable, mistaken belief that exhaustion had been accomplished. *Id.* at 1856-58. The Court, however, did not conclude that an inmate's failure to pursue all available appeals on an ARP that was procedurally dismissed because of a parallel IIU investigation would necessarily bar a civil action. *See id.* at 1860. The Court held that although PLRA exhaustion is mandatory, an inmate need only exhaust "available" remedies that "are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court identified three circumstances in which a remedy may be unavailable "despite what regulations or guidance materials may promise": (1) if "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) if the administrative scheme is so confusing or "opaque that it becomes, practically speaking, incapable of use"; or (3) if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Considering the Maryland regime, the Court noted that "Maryland wardens routinely dismiss ARP grievances as procedurally improper when parallel IIU investigations are pending," but also acknowledged "several cases in which an inmate refused to take a warden's jurisdictional 'no' for an answer, resubmitted his grievance up the chain to the IGO, and there received a ruling on the merits, without any discussion of the ARP/IIU issue." *Id.* at 1860-61. Describing these latter cases as "perplexing in relation to normal appellate procedure" and stating that Maryland's grievance process involves "at least at first blush, some bewildering features," the Court ultimately remanded the case for further consideration of whether the prisoner, in fact, had an available remedy. *Id.* Applying *Ross*, and consistent with earlier cases, judges in this District have found on the facts before them that a prisoner did not have an

available administrative remedy to exhaust where there was a pending IIU investigation. *See Oakes v. Dep't of Public Safety*, No. GLR-14-2002, 2016 WL 6822470, at *4-5 (D. Md. Nov. 18, 2016); *Brightwell v. Hershberger*, No. DKC-11-3278, 2016 WL 4537766, at *7-9 (D. Md. Aug. 31, 2016).

The Court reaches the same determination here. Carmichael did not have an "available" administrative remedy because the administrative scheme was "so confusing that no such inmate could make use of it." *Ross*, 136 S. Ct. at 1862. Although Carmichael filed an ARP complaining about Buss's alleged excessive force, that ARP was procedurally dismissed because there was an ongoing IIU investigation regarding the same matter. This dismissal tracked official prison policy as stated in the Division of Correction Directive, which provides that:

> The Warden or institutional coordinator *shall* issue a final dismissal of [an ARP] for procedural reasons when it has been determined that the basis of the complaint is the same basis of an investigation under the authority of the Internal Investigation Unit (IIU).
>
> a. The dismissal must refer to IIU's case number.
> b. The response shall read: "Your request is dismissed for procedural reasons final. This issue is being investigated by IIU, case number: _____. Since this case shall be investigated by IIU, no further action shall be taken within the ARP process."

DCD 185-003.VI.N.4 (emphasis added). In fact, Carmichael's Third ARP was dismissed by the affixing on its face of what appears to be a rubber stamp, containing language that almost exactly tracked the DCD, with the IIU case number entered in a blank space:

> Dismissed for procedural reasons. Final per DCD 185-003.VI.N.4. [. . . ] issue is being investigated by IIU, case number: 14-35-00759. Since this case shall be investigated [. . .] further action shall be taken within the ARP Process.

Mot. Summ. J. Ex. 1 Carmichael Dep. Ex. 8 (bracketed text illegible). Thus, as a matter of prison policy, the ARP process was not available to Carmichael.

Buss argues that despite this clear policy, Carmichael was nevertheless required to appeal the procedural dismissal to the IGO. The DCD states that the "rationale for dismissal" on procedural grounds may be appealed, DCD 185-003.VI.N.7, and Buss identifies examples of cases in which an inmate appealed a procedural dismissal of an ARP based on a parallel IIU investigation, and the IGO then considered the merits of the grievance. *See, e.g.*, Mot. Summ. J. Ex. 4, at 34-44, 46-54, ECF No. 48-7. He also references a letter received by Carmichael, in response to a request for legal advice on whether he could file a lawsuit against Buss, in which PRISM advised Carmichael about the exhaustion requirement and the process of filing appeals of ARPs to the IGO.

To the extent that the IGO has considered the merits of appeals of ARPs filed when there was a parallel IIU investigation, they appear directly to contradict the policy as stated in the DCD. The Supreme Court has labeled this anomaly "perplexing in relation to normal appellate procedure" and exposes the absurdity of this approach by posing a series of questions that arise from this "bewildering" situation:

- If the IGO thinks the wardens wrong to dismiss complaints because of pending IIU investigations, why does it not say so and stop the practice?
- Conversely, if the IGO thinks the wardens right, how can it then issue merits decisions?
- And if that really is Maryland's procedure—that when an IIU investigation, the warden (and Commissioner of Correction) cannot consider a prisoner's complaint, but the IGO can—why does the Inmate Handbook not spell this out?
- Are there, instead, other materials provided to prisoners that communicate how this seemingly unusual process works and how to navigate it, so as to get a claim heard?

*Ross*, 136 S. Ct. at 1860-62. Buss offers no answers for these questions. The Inmate Handbook and the relevant subsection of the DCD do not discuss the need to appeal a procedural dismissal based on a parallel IIU investigation. Although the PRISM letter provided an additional description of the exhaustion requirement and the appeal process, this letter from an outside

organization did not reconcile the contradiction between the clear state policy outlined in the DCD that ARPs must be dismissed when there is an IIU investigation and the general requirement to exhaust all possible appeals. In any event, by the time Carmichael received this letter, his deadline to appeal the dismissal of the Third ARP had already passed.

Faced with a similar situation, a judge in this District correctly concluded that "[w]here the relevant administrative rules provide clear grounds for a procedural dismissal of the complaint, it seems disingenuous to suggest that a prisoner ought to appeal such a dismissal even if he knows it was rightly decided and has no legal or factual arguments that the complaint was inappropriately dismissed." *Brightwell*, 2016 WL 4537766, at *9. Compounding the confusion for Carmichael was the fact that during the pendency of his ARPs, Sergeant Harsh, the RCI ARP coordinator asked Carmichael to "sign off" on an ARP because the incident involving Buss was "already being investigated" by the IIU, such that any related ARPs would be "moot." Carmichael Dep. 156-57, Pl.'s Opp'n Ex. A. Sergeant Harsh has not specifically denied making these statements, but instead has stated that he does not recall any specific conversation and that it was not his standard practice to the use the word "moot" when referring to a procedural dismissal of an ARP under IIU investigation. The Court concludes that under the facts of this case, Carmichael did not have an available administrative remedy because the procedure is so "opaque" that "no ordinary prisoner can make sense of" what, if anything, the administrative process requires where an IIU investigation results in the procedural dismissal of an ARP. *Ross*, 136 S. Ct. at 1859.

Furthermore, the Court concludes that viewing the evidence in the light most favorable to Carmichael, Sergeant Harsh's actions of asking Carmichael to "sign off" on his ARP and informing him that his ARP would be moot because of the ongoing IIU investigation caused

Carmichael to withdraw the Second ARP and not to pursue the Third ARP through the appeal process. Thus, the administrative process was also unavailable to Carmichael because Sergeant Harsh's erroneous statement advising Carmichael that there was no basis to continue to pursue the ARPs was a "misrepresentation" by a prison official that "thwart[ed]" Carmichael from "taking advantage of a grievance." *Ross*, 136 S. Ct. at 1859-60. For both reasons, the Court denies the Motion to the extent it is based on a failure to exhaust administrative remedies.

### III. Excessive Force

Buss contends that he is entitled to summary judgment on Carmichael's excessive force claim because the force Buss used was minimal and applied in good faith to maintain order. Claims of excessive force by a correctional officer against an inmate are analyzed as possible violations of the Eighth Amendment prohibition on cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Hudson v. McMillian*, 503 U. S. 1, 5-7 (1992). The "unnecessary and wanton infliction of pain" by a correctional officer violates the Eighth Amendment. *Hudson*, 503 U.S. at 5. The "core judicial inquiry" on such an Eighth Amendment claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6-7. To answer this question, courts look to "the extent of injury suffered by an inmate," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321).

In addition to showing that the officer acted maliciously, a party asserting an Eighth Amendment excessive force claim must also demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a

prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Here, there is a genuine issue of material fact on whether the force used by Buss while removing Carmichael's handcuffs "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6-7. Under Carmichael's account of the events, when Carmichael asked to speak to Buss's supervisor about the denial of recreation time, Buss became agitated and forcefully yanked Carmichael's right arm, causing the right side of his body to slam into the inside of the cell door. That Buss took the actions even though Carmichael had been complying with Buss's efforts to return him to the cell and remove his handcuffs demonstrates that the amount of force used was disproportionate to the need to use such force and suggests malicious intent, particularly where Carmichael described Buss as speaking to him in an angry, forceful tone. Owens generally corroborates Carmichael's account and also adds that Buss yanked Carmichael's once more after Carmichael tried to pull back in response, resulting in Carmichael's "arm hanging up outside the door." Owens Dep. 32:17-21. Although Buss presents a different version of events, in which it was Carmichael who became upset and pulled his hands away without provocation, causing Buss's hand to get pinched, the Court must view the evidence in the light most favorable to Carmichael for purposes of this Motion. Carmichael's evidence is sufficient to establish a genuine issue of material fact on the issue of whether Buss acted with malicious intent.

A reasonable jury could also find that the force used by Buss was nontrivial. As Owens witnessed the encounter, it "looked like [Buss] could have broke[n]" Carmichael's arm and that Carmichael didn't have any choice "but to crouch over or lose his arm." *Id.* at 95:1:16. Moreover, Carmichael felt like his shoulder was "out of socket," complained of pain for at least four to five days, and asked for medical attention for the injury on multiple occasions. *Id.* at 96-97; *see also* Carmichael Dep. 105, Pl.'s Opp'n Ex. A. The pain in his shoulder made it difficult to sleep in a normal position, prevented him from doing push-ups, and hindered his ability to write. As this Court noted in its September 30, 2015 Memorandum Opinion, the level of force used here is similar to force that was found to be nontrivial in other cases. *See Carmichael v. Hershberger*, No. TDC-14-3037, 2015 WL 5832401, at *7 (D. Md. Sept. 30, 2015); *e.g.*, *Bacon v. Wood*, 616 F. App'x 601, 603 (4th Cir. 2015) (reversing the district court's grant of summary judgment in favor of defendants); *Bacon v. Wood,* No. 7:13CV00565, 2014 WL 7369356, at *1 (W.D. Va. Dec. 29, 2014) (describing the facts of the case, in which a correctional officer responded to an inmate asking to talk to a supervisor by pulling his handcuffed arms through the tray slot, causing abrasions, lacerations, and an injury to the inmate's pinky finger).

The Court is unpersuaded by Buss's arguments that the remaining evidence contradicts Carmichael's account such that no reasonable jury could believe that Buss used excessive force against Carmichael. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). First, this Court has already rejected Buss's contention that Carmichael's medical records establish that any force used was minimal, *see Carmichael*, 2015 WL 5832401, at *8, and Buss has presented no new evidence on this point. Second,

Carmichael's statements during the July 16, 2014 disciplinary hearing, considered in context, do not constitute an admission that Carmichael did not act maliciously or sadistically. As part of his closing statement, Carmichael stated that "whatever happened between Officer Buss and I—we both probably had a misunderstanding somewhere—and whatever happened, it never was not intentional. And I do apologize for that." Mot. Summ. J. Ex 5. Significantly, Carmichael made the statement in a disciplinary action against him for the alleged assault or battery of Buss and damage to prison property. Viewed in the light most favorable to Carmichael, his apology and statement that an act was not intentional is properly viewed as referring to Carmichael's pulling back of his arm, which resulted in Buss's hand getting pinched by the food slot in the cell door and the breaking of the handcuff key, and which Carmichael has separately asserted was an immediate reaction to Buss's initial pulling of Carmichael's arm that caused him to slam into the cell door. Carmichael did not admit that Buss's initial pull on his arm was unintentional. Particularly when viewed together with the deposition of Owen, Carmichael's account in his deposition was not so "blatantly contradicted" or "utterly discredited" by Carmichael's statements in the July 16, 2014 disciplinary hearing as to render it unbelievable. *Scott*, 550 U.S. at 380; *cf. Hall v. Wash. Metro. Area Transit Auth.*, 33 F. Supp. 3d 630, 632 (D. Md. 2014) (stating that the court must adopt the nonmoving party's version of events if the record includes video footage that is "unclear and ambiguous" (quoting *Glascoe v. Sowers*, No. ELH-11-2228, 2013 WL 5330503, at *5 (D. Md. Sept. 20, 2013))). Accordingly, Carmichael has presented sufficient evidence to establish a genuine issue of material fact on whether Buss used excessive force in violation of the Eighth Amendment.

## IV. Qualified Immunity

Buss also seeks summary judgment on the excessive force claim on the basis that he is entitled to qualified immunity from suit in his individual capacity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Summary judgment should be denied on a qualified immunity claim if (1) there is sufficient evidence to establish a genuine issue of material fact on whether the government official violated one of the plaintiff's federally protected rights; and (2) the right at issue was "clearly established" at the time of the events in question. *See id.* at 232. "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted).

Buss is not entitled to qualified immunity on the excessive force claim. First, for the reasons set forth above, *see supra* part III, the Court finds that there is a genuine issue of material fact on Carmichael's excessive force claim against Buss. Second, Buss has provided no basis for the Court to reconsider its prior conclusion, in its September 30, 2015 Memorandum Opinion, *Carmichael*, 2015 WL 5832401 at *8, that as the time of the incident on July 8, 2014, it was clearly established under Supreme Court and Fourth Circuit case law that inmates have an Eighth Amendment right to be free from excessive force by correctional officers, and that the application of nontrivial force can support such a claim even without serious injury. *See Hudson*, 503 U.S. at 4; *Wilkins*, 559 U.S. at 37-39; *Hill v. Crum*, 727 F.3d 312, 320-21 (4th Cir.

2013). Thus, the defense of qualified immunity does not provide a basis for the Court to grant summary judgment in favor of Buss.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, is DENIED. A separate Order shall issue.

Date: June 9, 2017

_____
THEODORE D. CHUANG
United States District Judge